Mr. Love for the appellant, Ms. Atiyah Erica for the appellate. Let's wait until the courtroom clears. Mr. Love, good morning. Good morning. Good morning. May it please the court. Richard Love for the District of Columbia. I would ask for three minutes for rebuttal. In light of the significantly lower rates that are awarded in the large number of IDEA cases identified in this record, the enhanced LAFIE rate of $625 an hour is not required to attract competent counsel, and the enhanced LAFIE matrix is not a reasonable measure of If you look under either the applicable case authority, if you look under IDEA, and if you look under the facts of the case, either individually and certainly in totality, it's clear that Ms. Eley was required but failed to produce evidence that the rate she requested was in line with the prevailing district rate for IDEA cases and necessary to attract competent counsel. For this court, for example, under applicable case authority, this court and National Association of Concerned Veterans versus the Secretary of Defense required fee applicants and I quote to provide specific evidence of the prevailing community rate for the type of work for which a fee award is sought. There's no dispute the type of work here is IDEA litigation services. If you look under IDEA, it's a very specialized statute. It requires a number of procedural requirements, and it authorizes district courts in its discretion to award fees to a parent that prevails in an IDEA action, and then only at the prevailing local right for the kind of services that are furnished. The only kind of services that are going to be furnished in an IDEA case are going to be IDEA litigation services. So we think that the statute also provides authorities. That statute, the kind and quality language is exactly the same as the kind and quality language in the Equal Justice Act. It is, Your Honor. That's not unusual. It is not. And hasn't the Supreme Court at least indicated that all these fee-shifting statutes, regardless of little nuances in the language, ought to be interpreted the same? And we're not suggesting that there's different case authority that's applicable. I mean, we believe the, you know, line of cases that have been cited interpreting fee-shifting statutes are equally applicable here. What we're saying is that it's appropriate to define the market here as IDEA litigation services for a number of reasons, one of which is the IDEA statute itself. But beyond the IDEA statute, beyond case authority, I think if you look at the facts of this case, that supports that notion as well. For example, in this Court Saver-Cumberland-Mountain's opinion, it found that the rate should be commensurate with the prevailing community rate, and again, I quote, for attorneys of like expertise doing the same sort of work in the same area. And it's undisputed, if you look at the attorney's verified statement in this case, the expertise and the sort of work that was done here is undisputably special education law, IDEA litigation services. And if you look beyond... So you're not asking for LAFI, you're saying LAFI, enhanced LAFI, neither of those is good? No, no, we're saying that enhanced LAFI exceeds the market rate as identified in the numerous, it's probably between both parties cited. Right, so enhanced LAFI, what about LAFI? The United States Attorney's Office LAFI maintenance. Well, we think that sets the market. And there's a variety of opinions that move up and down the U.S. Attorney's Office LAFI scale. But even at the height of the LAFI scale, that's $445 an hour. That's $180 less than the, an hour, less than the award. But why do you think that's okay as a reflection of IDEA cases and not enhanced LAFI as a reflection of IDEA cases? Well, because the only evidence of a market rate that's tied to IDEA cases in this record are the probably close to 50 or so district court cases. Not a single one of which awarded the enhanced LAFI rate. Isn't that pretty circular? Because if you go back to the first of those district court cases, it then determines LAFI, not enhanced LAFI. And then, but was that correct? I mean, are we bound at some point? Does that set the market that a few district courts have done it in a particular way? I think on this record it does. There's no other evidence in this record of a market rate in this, for these kinds of services that exceeds the maximum of the United States Attorney's LAFI matrix rate, which is $445. At least $180 less. Are these cases generally handled on a, do we know, is there any indication that they're generally handled on a kind of quasi-contingent basis? You pay my fees only if I prevail, and if I do prevail, I'll collect from the District of Columbia government? There's no evidence in the record. I don't know. The reason I'm asking that, I'm wondering about whether these 40 or 50 cases that you cite, that's the market right there. Because these attorneys that are handling these cases are not generally collecting fees when they lose from the client. They're collecting fees only when they win, and when they do win, they collect the fees from the District of Columbia government. And so all we have to do is just look at the average rate that was awarded by the district courts? I think on this record that's absolutely correct. I mean, I can only surmise- But how is, keep going, sorry, I interrupted. I can only surmise, there's nothing in this record in terms of whether or not individual lawyers collect anything if they lose. Okay, how is the first district court supposed to have made the decision? Well, I think the first district court, well, it depends on the record. I mean, if in the record there's submitted affidavits from other attorneys who in idea cases received rates either equal to or above the maximum of the United States LAFI, that could be considered. But in this record, that doesn't exist. But going to Judge Randolph's question, it's possible, I suppose, in these kinds of cases that they're not collecting fees if they're not prevailing. And so there'd be no way to really determine a market, or is that not right? Well, I think on, I'm not sure I understood the question, but I mean, on this record, I think the market is determined- Going back to the hypothetical, the first district court's facing this issue. What fees are reasonable? And so you don't have a body of prior district court cases to look at. Right. And you look at the market, but it turns out in idea cases, and I don't know if this is true or not, but if the cases don't prevail, they're not collecting fees. Well, I think it's- Then you don't really have much to look at. It's the fee applicant's burden to produce evidence to justify the rate. And that can be done in a number of different ways. So even on the first case, if there's no district court precedent, it would depend on, but it'd be incumbent upon the fee applicant to justify the fee. Either through affidavits from other attorneys, or however they seek appropriate with the applicable case authority to justify. If the choice is just between LAFI and Enhanced LAFI, why follow, maybe I'm loading the dice by calling one Enhanced, but anyway, that's the term. Just, I'm referring to, I don't mean to load the dice, but I'm referring to it that way. But why would we use an all items CPI, rather than a more targeted index that's targeted to legal services? Well, because, I mean, I think essentially that's irrelevant for, it avoids the central question in this case. And it's not what is the more appropriate method of measuring inflation. What we're saying is that that sort of obscures the central question. Which is? Is it $445, or is it $625? That's the market rate in an idea case. But, yeah, okay. And we think on this record in particular. But can you answer my question, which is just if we have the choice between those two, and it goes back to the original LAFI matrix, why would you use an inflation index that's not targeted to legal services, but that includes housing, food, etc., which really have nothing to do with the market and legal services? I don't know how to answer it any differently than, it's really, regardless of how you measure inflation, it still comes down to, is the market, you know, X dollars or X dollars? And I think on this record, the X dollars, the maximum of the X dollars is the US Attorney's LAFI matrix of $445. Do you accept this LAFI matrix? Well, I think it's- Let me ask you a different question. Sure. Are there any cases that have rejected this or questioned it? The premise of the LAFI matrix is, I think, open to doubt. There are. The premise is that the longer you practice law, the more valuable an attorney you are. And I'm not sure that that's true. Well, this court has called it, you know, a crude kind of device. It lumps attorneys into these large, large categories. And there are, in the array of district court cases that have been identified in this record, some courts have found it inapplicable. And they've identified a different rate. Some have applied a DCPS guideline rate, which- What's the rate that appointed counsel get in criminal cases? That's in our brief. In a footnote, I think it's 125, something like that, in this court. So, I mean, there is some context, and this rate is totally at context. But I think that, you know, we also have to look at- What's our standard of review? Well, we think it's kind of a mixed question. I mean, I think she, the district court, missed a step here in determining what is the market, what's necessary to attract competent counsel. And that's a point I think I've neglected a little bit. I think it's also, in this court, excuse me, the Supreme Court in Delaware Valley said that a fee should only be as large as necessary to attract competent counsel. And just as we think on this record, you can't say that the market is $625 an hour when not a single case has been identified in which that rate has been employed in an IDEA case. And the rate at its most is at least $180 less. I think, similarly, it can't be- But how do we know if the answer to the question- I'm sorry to interrupt. Sir, how do we know if the answer to the question you just posed is $150 an hour? Well, you don't. And I'm not saying, you know, there's a range. And we're talking about where does the court abuse its discretion, if that's the appropriate standard. And we would think it's above the maximum rate in the US attorney's laughing matrix, because that's the top rate of any of these cases that have been identified in this record that have been awarded in an IDEA case. And the premise of laughing was that it was complex litigation, right? That's right. And that's why courts have moved up and down that scale, but no higher than that. And- Do you think this is not complex litigation? This case? No, this kind of case, IDEA cases. I think it's clearly distinguishable from the type of litigation on which the laughing matrix was formulated. If you look at laughing, I mean, laughing was a complex employment discrimination case, typically, you know, that was tried. There was numerous plaintiffs. There were, you know, discovery, motions. Typically, in this case here, there was an administrative hearing one day. I think there were four witnesses, seven exhibits. And the case went to district court, basically, on a record review. There was no additional, there was no discovery. There was no additional evidence submitted to the district court. And it was decided- So, therefore, there were not that many hours in question. I mean, doesn't the number of hours take into account that? It could be, but I don't think that's necessarily always true. A counsel could be inefficient. They could raise lots of issues and waste a lot of time on things that aren't particularly relevant. It could be true, but I think it also could not be true. Now, what if- Go ahead. I just want, what's the number you're drawing out of this laughing matrix? Well, our point simply is that- What's the hourly rate? $445 an hour for an attorney with this many years of experience is the most that has ever been awarded in any of the district court IGHC's that's cited in this record. Am I looking at the wrong matrix? I'm at JA 96. Yeah, I think you probably are, because in the deferred appendix is only the enhanced Laffey matrix. We cite it to the Laffey, the U.S. Attorney's Laffey matrix and identify the electronic- The one on JA 96 is the enhanced one? Yes. And there is some confusion, of course, with the term Laffey and the U.S. Attorney's Laffey matrix and the updated Laffey matrix, which is not the enhanced Laffey matrix, and then the enhanced Laffey matrix, but the exhibit on JA 96 is the enhanced Laffey matrix, and the amount there under 11 to 19 years in the top, $625 is what was awarded here. So we believe that rate, 625- That wouldn't be correct either. Don't you measure the rate from the time that the proceeding occurred? That's right. That's another error. The proceeding occurred when? I think between 11 and 12 or 10 to 12. But earlier than 2013, the court, and we did not raise this in our brief, but the court did, I think, inappropriately award current rates when it should have been awarded historical rates. I think the court is correct. But in any case, the $625 an hour cannot reasonably represent the prevailing district rate in IDEA cases or be necessary to attract competent counsel when no other district court awarded more than $425 an hour. Many have awarded three-quarters of that amount, and Ms. Ely has presented no evidence that district lawyers in IDEA cases commonly, indeed ever, received the rate that was awarded here. For that reason, we believe that district- I'm going to ask a variation of something I've asked before, but suppose the first case had been awarded, as you think it should be, 445 or whatever, 445, and it had been appealed, and you had come up here and said, well, no district court's ever awarded 445 before, and that, I mean, why did- I think it's- It just seems like we're at C here. I think the way the court structured this in Covington is it recognized that evidence of recent fee awards can be used to support or challenge the reasonable hourly rate. And, you know, sure, the first case- The idea of a reasonable hourly rate, though, seems to me to be market, looking to a market, and yet we're not looking to a market, we're looking to court awards. But I think this court said in Covington, clearly, that the awards can be looked at to determine the market. Yeah, I agree. I'm just, the logic of all of this is- Well, I understand. Mr. Love, before you sit down, will you address the argument that your opponent raises, that you never made this argument in the district court? Yeah. I think if you look at the record at JA 131 to 132,  you know, Ms. Ely's argued that enhanced LAFIE rates, I mean, the district said that Ms. Ely's position that the enhanced LAFIE rates comport with prevailing community rates, and I quote, takes no notice of the decisions in this jurisdiction ordering three-quarters of the LAFIE rate or less than the LAFIE rate for work completed in IDEA cases. And then after identifying those cases and other contrary evidence, the district argued then, again, I quote, that it had set forth multiple sources that demonstrate that the rate does not accord with prevailing rates in the community for similar services by lawyers possessing similar skill, experience, and reputation. I think we squarely raised this argument in the district's opposition papers. I think it was not weighed for this. Okay, and the other thing, if a parent can't afford an attorney, the court appoints an attorney in these cases? Not in this court. Sometimes in the superior court, they do have a panel of special education attorneys that are appointed sometimes in delinquency or child neglect cases. What do they get an hour? $90 an hour, but it is win or lose, but not in this. At any rate, we believe that the court erred by entering an award far above market rate, not reducing it as, in fact, IDEA requires when it exceeds a prevailing community rate. We would ask the court to reverse and remand for an IDEA case. All right, thank you. Mr. Turca. May I please report? Good morning, Douglas Turca, Council for Missouri. I'd like to start with a few small points. First, regarding the panel when attorneys are court appointed in neglect cases. I don't do any of that work. My understanding is that, yes, that rate is paid win or lose, and perhaps more importantly, it's used as kind of a backup rate. I think those orders are usually crafted such that the court instructs the appointed attorney to seek fees from the district if the attorney prevails, and otherwise, they charge $90 an hour to the superior court. Regarding the small question of the use of the current rates raised by your honor, as counsel acknowledged, that was not appealed here. Not only was it not appealed here, it was not contested in the court below. That's a discretionary matter for the court to accommodate delay in payment after the work. So current rates were used on the request of Ms. Zealy. The district did not object at that time or before this court. I would like to address what can seem like a small point, and with respect to your honor, the question of loading the dice by calling this enhanced. And I know this seems like maybe a minor semantical point, but this has been part of a long-term strategy by the district to slant the judge of the district court, I think. Right, and using the terminology, I take to your point. So I was just using that terminology, but they're both neutral to me. I'll just refer to Amiki. Amiki was especially concerned about the issue of the inflation adjustment. That was also a part of our case before the district court. And this court has specifically recommended that latching matrices be adjusted for inflation. So the only question is how they are adjusted for inflation. We're prepared- 625 an hour, if you do 2,000 hours a year is 1.3 million, and that seems high. That's a fair question, your honor, and I can understand why that number might stick in one's pro. However, I think that's leaving out a lot of factors. And I mean, I'm not here to testify, but I can tell you I don't know anybody getting rich off this. In fact, I don't know anybody supporting a family on this. I'm not doing that. Right, because you're not filling out, then there are cases that don't come up winners, but I don't think we can factor that in to this. Well, I think the court can factor that in if the court takes the approach the district is asking the court to take. There's no contingency multiplier, and we're not asking for one. We're asking for market rates set through a certain system. The district is trying to shortcut that process of how to determine the market rate, and to focus only on the one question from Purdue, which is, is this sufficient to attract competent counsel? Purdue mentioned that, that that is the point of the fee award. I think almost every case in making a fee award has made that observation. But Purdue did not throw out all the case law that makes that process possible and consistent for the courts. If the district and if this court choose to focus on that question, then I think we do have to ask, okay, will this rate, in fact, attract competent counsel? I don't think we have any clue. We don't have a clue. No one has a clue. At this point, we don't. We certainly don't. I don't. Well, it attracted you. Your affidavit says 95% of your practice has been in the field of special education law. Now, I heard you say you don't make a living off of these hearings, but you also said you've litigated over 1,000 IDEA administrative cases and 20 IDEA federal cases. Over what period of time? Since 2003, I've been specializing in IDEA work. And I think that's an important point with looking over some of these recent district court decisions. First off, I would ask the court, if there is a review of those district court decisions, that the court look to JA 151 to 54, which gives a much better overview of what's going on in these cases, including the fact that 18 of them are, in fact, identical cases from the same judge. But to address the issue of- Well, I just want to ask you, if 95% of your practice is IDEA, or is it not? Are you doing other special education work? Because that sounds to me as if, yes, you do make your living from these cases. And I appreciate the question, Your Honor, if I may address it directly. What has occurred in the special education world in this jurisdiction, there's been a gigantic upheaval in the last few years. Prior to 2008, the relationship about billing with the District of Columbia was fairly amicable. Well, there were two main changes. First off, up to that point, the win rate for parent attorneys, at least as far as I knew and what I saw in my firm, was 90% to 95%. That was primarily because the district did not bother to contest cases where it knew it was wrong. So cases could be done quickly. They were done under the fee cap, and they had that kind of success rate. Billing, as far as I know by everybody, was accomplished in the same way. We sent our bills to the district. The district would send back some proposed payment, or the district would send a proposed lump settlement agreement. And we have one of those in this record. At that time, the district was paying at least my bills. The paying at 100%, or at some number, rounded down to just a round number, as it did in the settlement in this case, where it rounded, I think it was 90,000 and changed that to 90,000. And so that was the consistent system. On October 1, 2008, and this is on a deposition, the district decided that it would not do any more settlements of attorney's fees. It also stopped paying attorney's fees. And that is why, since that time, we've had an explosion of fee litigation at the district court. So now what has to happen is that for every, if you want payment, we have to be in a situation exactly where I'm here, which is I'm right now arguing for work that I did five years ago. And I'm arguing for the money only for the work in which I prevailed. And of course, we get paid only for those prevailing theories. So it's not just prevailing in the case, but prevailing only in theory. So at this point, we're looking at a situation where, first, if you're getting paid for 50% of your billable work, I consider that a good result. And then, of course, if you're a small practitioner, you are not spending all of your time on billable work. It's a much smaller fraction of this. I can say that I use, for my estimates, I use one quarter of what the hourly rate to get to my actual rate. Now, if we take one quarter of 625, we're still at what seems like a big number. But we're looking at, if you had a 40-hour work week at that number, sorry, I've done the math before I came in here, but it comes out to about $350,000 per year. Now, that's a nice salary. That would attract a lot of people. We're talking about, though, at the top of the class, as counsel observed, people who are down in the one to three bracket are making something half that. We're talking about no benefits. We're talking about the overhead of running a small firm, even if you're at minimal expenses. You have to carry those expenses. And again, we're talking about living in a world of great uncertainty and with a major delay in payment. If an IDA practitioner starts an administrative case today, at a minimum, they are not, assuming they win, they prevail on every issue. At a minimum, they are not getting paid for a year and a half to two years. That's the process. So- Did I hear you correctly? You only get paid if you win? If you are representing poor clients, yes. So it's contingence. Essentially, it's contingent, yeah. So in that world, and because these decisions in the district court are recent, we haven't seen all of the fallout from this new system yet. But there is evidence in the record about what has occurred. And we cited in our brief and in our filings below, the Thomas BDC decision that talks about what the court called the disgraceful state of affairs. That was based on uncontested evidence from the plaintiff, who I represented in that case, of the devastation that occurred in the parents attorney bar starting at that time in 2008, 2009. Prior to 2009, my firm or myself, we were litigating literally more than 200 cases per year for the period 2004 through 2008, inclusive. Last year, I filed, I think, fewer than five cases, definitely fewer than ten, on behalf of parents who could not afford representation. That's similar, there's been a similar change in other firms. The largest firm by far, who was doing 40% of IDEA administrative litigation, almost all of it for parents who could not afford representation. They cut their practice down by 80%, I believe. Again, all of that evidence was presented in Thomas BDC, which we cited. And the district- I think you said that the cause of that was- The fact that DCPS both cut the rate it would willingly pay, and stopped settling and stopped paying. So what happened was the rate was cut, but then also all of a sudden you had a huge delay. And again, you have to look to, and I can attest to exactly the effect of it, because in early 2009, a few months after they instituted this policy, on October 1st, 2008, I shut my firm's doors. I fired an associate and four other employees, and I've been essentially on my own with part-time help since then. I'm not asking for the court's pity, I'm reporting what the reality is of whether this is attracting counsel. Now, on the standard of review, to go there, I think you say it should be abuse of discretion, right? I think the court has been very clear that it's abuse of discretion. So if the district court here had awarded the other Laffey, I'll call it, would that have been an abuse of discretion? Well, I have had to ask myself that question. I was counsel in some of the cases that we're talking about here. And sometimes it's been a tougher call than others about whether I would bring that case up, and of course, sometimes it's the client's call more than mine. I think that it would, in this case, have been an abuse of discretion, because in this case, there was no evidence presented to the court on which to make a determination of how to adjust the Laffey matrix for inflation, other than the evidence presented by the plaintiff, which was expert testimony. And then the court, of course, cited all the other sources. It continues to be the case that the district has not cited any additional evidence for a different method of inflation adjustment. And I think he addressed this at length, and the district court did as well, in a very carefully considered opinion. Just to follow up, one possibility, if you prevail here, is that the court would say, well, it's not an abuse of discretion. It's up to the district court to go with Laffey A or Laffey B, which is an odd state of affairs, in some respects, to say that district courts have this huge range for very similar cases. Maybe that's okay, though. It would remain the messy situation that it now is, and I don't pretend that it's a very stable situation. It is true that when a parent files a fee case before the district court, they have no idea what the rate is going to be until the judge is assigned, and perhaps not even met. And yes, that makes for a messy situation, and one I'm sure this court would prefer not exist, and I'm sure the district court would prefer not exist. However, this court may make the determination that that's an issue for the legislature and not for this court. If this court is going to address that issue, on this record, I don't think that the district has presented anything but a reason to accept a Laffey matrix as a measure of community rates, and to accept this method of adjusting the Laffey matrix for inflation, as this court has instructed be done. The district's main argument is that we need our own separate matrix for IDEA litigation. This court has explicitly rejected that argument in Covington, in which the court said, rejected an argument that it had to be broken down by a statutory scheme. And additionally, since Laffey itself, the court has used Laffey in a whole Access to Justice Act, as Judge Randolph mentioned, 1988, Laffey itself was Title VII, and even the Surface Mining Control and Reclamation Act in Cumberland Mountains. I guess the response to that would be the statutory language here seems a little more tightly drawn to this kind of case. Well, in fact, the Surface Mining Act, and as Judge Randolph observed, the Equal Access to Justice Act, now match the same language. I think the only reason that is, is because the IDEA has been amended, for other reasons, since Bloom, and so is seeking to mirror the language that has been adopted by the courts with approval for that language. I don't think there's any evidence that there was an attempt to overturn the entire scheme. The evidence before the magistrate and the district court, was there any evidence other than your practice, your billing practice? Of market rates? Right. There was my billing practice, my affidavit regarding billing practice. There was my evidence regarding past settlements with the district, again, of my bills. And there was the reference to the Laffey matrix with the expert report and approval of it. There was nothing at all from the district. So that specific contrary evidence that this court has demanded of the defendant in fee litigation was simply not produced. But the answer is no. You didn't have affidavits from other... No other affidavits. If that was your question, I'm sorry if I misunderstood. Can I go back to, and I'm not, I don't mean to be picking on you, but you said you were paid 100% of whatever you requested before 08. Is that right? Yes. What was that rate? That rate were rates, it wasn't exactly this number, because it was an earlier year and I was lower on the matrix. It was exactly, I don't remember the number, Your Honor. It was exactly comporting, though, with this version of the Laffey matrix. I mean, was it 300? Was it 400? In 2008, I hate to, I can look up the matrix, but I believe the number was something like 450. All right. So... And please, I want to emphasize that I'm going by memory. All right. Well, let's just take that then as a hypothetical. And the district is paying 100% of a $450 an hour rate and says, we're not going to, in effect, we're not going to pay that anymore. We're not going to settle. We're going to contest it. Is that the state of affairs in 08? Absolutely. Based on your experience? That is absolutely the state of affairs, and that is my, you know, conversation with many different parent attorneys. I mean, there's just no question about that whatsoever. And again, the explosion of litigation in the district court, I think, would clearly exhibit it. All right. Now, the 1,000 administrative cases that you handled, was that before 08? The overall majority of those were before 2008. And how many have you handled since 08? For clients who could not afford representation or overall? Well, for the fees that you're collecting from the district. For collecting from the district, it's been fewer than 100 for sure. All right. My time is up. Would Your Honor like me to find the numbers from the matrix, or? That's OK. If there are no further questions, we will ask that the court affirm. All right. Does Mr. Love have any time left? All right, why don't you take two minutes, if you need him. Very briefly, Your Honor, I want to just point out that the fee shifting statute isn't to enhance attorney's business. It's to ensure that a client can get competent counsel to prosecute these cases. We've cited district court cases all the way up into 2013. So there's a continuing history of clients being at least able to get counsel to represent them in these types of cases. The second I would point out, there's been some reference to the Equal Access to Justice Act, and using the same language. Of course, the Equal Access to Justice Act has a soft cap of $125 an hour. And again, I want to emphasize that Ms. Ely is the fee applicant, and has the burden to introduce the evidence to support the rate that she's requesting. And the best, indeed, the only evidence in this record are the district court decisions. That is a recognized form of evidence by this court. And in future cases, the district may introduce evidence to justify a lower rate. Plaintiffs may introduce evidence to support a higher rate. On this record, the only evidence that's tied to idea and defines the market here is the district court decisions, which we think were appropriate evidence, were identified in opposition to the plaintiff's motion for fees, and were not taken into consideration by the district court in terms of establishing the market. Do you agree the standard's abusive discretion? I think using an abusive discretion standard would reach the same result. And the district court abused its discretion by discounting the only record evidence that's not the rate. Well, my question was, do you agree that the proper standard of review in these kinds of cases is abusive discretion? Yes, unless it's an illegal issue, it would be an abusive discretion. You agree that the counsel for the plaintiffs in the idea action is entitled to attorney's fees? Yes, as a prevailing party, the statute provides that. And what is the rate that you would agree to? Well, we think here the record only justifies a fee that would be, at maximum, $445 an hour. Beyond that, I think the court abuses its discretion in awarding it. Have you made that offer to your opponent? I don't know. We haven't had any negotiations on the appellate level. I don't know what was done prior to the case moving forward and on appeal. Would he be entitled to attorney's fees for this appeal? If he prevailed. On the $445, I'd just go back to this. You're saying that's OK because that's LAFI. And you're saying $625 is not OK because that's, as you call it, enhanced LAFI. But the only difference between those two is the inflation index. And why is it an abusive discretion? Let me finish the question. Why is it an abusive discretion to choose the one inflation index over the other when it seems like you can make decent arguments for both? And I said because the market is defined by the record in this case only runs up to $445 an hour. There's no evidence. In fact, there's not a single idea case of 50 cases or so cited that approved an award of $625 an hour. So it simply can't on this record be supported that that is a prevailing community rate for idea practitioners in the District of Columbia. And that's why we say on this record, the market as defined by this record has a ceiling of $445 an hour regardless of how you measure inflation. The bottom line is, what does it take to attract competent counsel to establish the market rates? And here, the market rate is established by the only evidence, as I said, which is at most, it's at least $180 an hour less than the rate that was awarded here. And that's why we believe it was an abusive discretion to enter the award that was entered by the district court here. Can I ask you one last question? And that is, Magistrate Judge Kaye used a rate for non-complex litigation and then cut it 25%. I just don't remember. Did you propose that in the district court? What did you? No. Did anybody argue for that? I think we argued for an even lower rate. But when the district, when Magistrate Judge Kaye's report and recommendation came out at three quarters of Laffey, we did not object to that. All right. Thank you. Thank you, Your Honor.
judges: Henderson, Kavanaugh, Randolph